# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DREILING MILLENNIUM TRUST II,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 10-1951 |
| **RELIANT RENAL CARE, INC.,** | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                  **June 29, 2011**

This case involves allegations of intentional interference with contractual relations arising out of the attempted purchase by Defendant, Reliant Renal Care, Inc. ("Reliant"), of several dialysis centers partly owned by Plaintiff, Dreiling Millennium Trust II ("Dreiling"). Dreiling alleges that after negotiations broke down, Reliant used confidential information in an attempt to sever Dreiling's relationship with two physicians (collectively, the "Doctors") who co-own two of the dialysis centers with Dreiling.

Before the Court is Reliant's motion to dismiss. The primary issue raised in this motion is whether an actual breach of contract must be alleged in order to properly plead an intentional interference of contract claim. Because I find that such allegations are required and have not been pleaded by Plaintiff, I will grant Defendant's motion.

1

**I. Background**

The relevant facts, viewing the complaint in the light most favorable to the Plaintiff, are as follows:

Dreiling is a Florida trust that owns and operates numerous dialysis facilities that provide care for patients with end-stage renal disease. In two of those facilities, including the Pennsylvania Dialysis Clinic of Reading (PDCR),[1] the Doctors are fifty percent partners with Dreiling.

In March of 1987, the Doctors and Dreiling signed a Voting Agreement (the "Agreement"), which was intended to govern the future transfer of both Dreiling's and the Doctors' shares in the PDCR. Included in the Agreement was an Impasse provision, which allowed the parties to declare an impasse in the event that they were unable to agree on the management of the facility. Under the Agreement, declaration of an impasse triggers a Buy-Sell provision, whereby one of the parties names a price, and the other chooses whether, at that price, it wants to be the buyer or seller. If buyer, that party purchases the other party's shares for the named price, and if seller, that party sells its shares at the named price. The declaration of an impasse ends the business relationship between Dreiling and the Doctors. (Compl. ¶¶ 7-9.)

Defendant Reliant is a Delaware corporation that also owns and operates dialysis centers. (Compl. ¶¶ 2-3.) Early in 2009, Reliant entered into negotiations with Dreiling for the purchase of

---

[1] In 1985, Dreiling and the Doctors incorporated PDCR in the State of Florida. In the same year, the Doctors were given an option to purchase fifty percent of the shares of the PDCR, which they exercised in 1986, thereby making Dreiling and the Doctors fifty-fifty partners. (Compl. ¶ 6.)

five dialysis centers,[2] including the two owned by Dreiling and the Doctors. By June of the same year, the substance of these negotiations had been reduced to five separate Term Sheets, one for each of the centers. The Term Sheets provided for a due diligence period, to take place over the next several months. During this period, Dreiling provided Reliant with confidential information, including a copy of the Agreement between Dreiling and the Doctors. In October 2009, Dreiling alleges that Reliant took the position that the sale could only be completed on "dramatically" different terms than the parties had agreed to in the Term Sheets. Dreiling declined, and both parties' obligations under the Term Sheets ended. (Compl. ¶¶ 12-16, 20.)

Dreiling claims that at this point Reliant, unsatisfied with the failed transaction, concocted a scheme to gain control of some of the centers, particularly PDCR. Because Reliant wanted control – more than a fifty percent interest – any sale would have to involve the purchase of some of Dreiling's interest in PDCR. Therefore, Dreiling asserts that Reliant began to correspond directly with the Doctors, encouraging them to declare an impasse under the Agreement, triggering the Buy-Sell provision allowing the Doctors a chance to purchase Dreiling's interest (or, conversely, to be bought out by Dreiling). (Compl. ¶¶ 18, 20-22.)

According to Dreiling, Reliant's work bore fruit. On March 23, 2010, the Doctors sent a letter to Dreiling expressing their desire to complete a sale of the PDCR to Reliant based on Reliant's proposed terms. The Doctors informed Dreiling that, absent renewed discussions with Reliant, they were prepared to declare an impasse under the Agreement. Dreiling responded on

---

[2] These centers were the PDCR, Renal Care of Oil City, the Reading Dialysis Center, Renal Care of Clarion, and Renal Care of White Oak. Dreiling co-owns all the centers, but Dreiling and the Doctors jointly own only two: the PDCR and the Reading Dialysis Center. (Compl. ¶ 10.)

March 31, 2010, proposing several alternatives to the declaration of an impasse and the ending of the relationship. Apparently uninterested in the alternatives, the Doctors responded to Dreiling's letter on April 7, 2010 with a counter proposal. (Compl. ¶¶ 23-25.)

Importantly, according to the complaint, despite these varying proposals and counter proposals, Dreiling and the Doctors have "been unable to reach any resolution" regarding this conflict. Nonetheless, Dreiling asserts that Reliant is still actively encouraging the Doctors to declare an impasse. Dreiling also alleges that Reliant's meddling has fostered "discord" with the Doctors and, as a result, the value of both the PDCR and the Reading Dialysis Center has declined. Dreiling complains that if Reliant is allowed to continue in its current course of action, Dreiling may be unable to pursue a sale of the PDCR on the open market. (Compl. ¶¶ 25-26, 32-33.)

## II. Standard of Review

When considering a motion to dismiss, the court must assume the veracity of well-pleaded factual allegations, construe them in a light most favorable to the plaintiff, and "then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reaffirming Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court may only look to the facts alleged in the complaint and its attachments when deciding a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). "'[B]are-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).

4

**III. Analysis**

As noted above, Dreiling's only claim is that Reliant intentionally interfered with its contractual relationship with the Doctors. The most common formulation of the elements requires a plaintiff to prove: (1) the existence of a contract between the plaintiff and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998); Pawlowski v. Smorto, 403 Pa. Super. 71, 78, 588 A.2d 36, 40 (Pa.Super. Ct. 1991).

Other courts have varied these requirements. The second element has been modified somewhat to require a showing that "the defendant interfered with the performance of [the] contract by inducing a breach or otherwise causing the third party not to perform." Pilot Air Freight Corp. v. Target Logistics Servs., 2001 WL 959400, at *2 (E.D.Pa. Aug. 20, 2001); Nat'l Data Payment Sys., Inc. v. Meridian Bank, 18 F.Supp. 2d 543, 549 (E.D.Pa. 1998); Al Hamiton Contracting Co. v. Cowder, 434 Pa. Super. 491, 497, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). The fourth element has similarly been stated to include breach language: "the plaintiff suffered pecuniary loss as a result of the breach of contract." Pilot Air Freight Corp., 2001 WL 959400, at *2; Nat'l Data, 18 F.Supp. 2d at 549; Al Hamilton Contracting Co., 434 Pa. Super. at 497, 644 A.2d at 191.

As the Court in Pilot Air Freight Corp., 2001 WL 959400, at *2, noted however, Pennsylvania's adoption of the Restatement (Second) of Torts section 766 clarifies much of the confusion inherent in the disparate statements of the rule:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by inducing or otherwise causing the third person not to perform the contract, is subject to liability

5

>to the other for the pecuniary loss resulting to the other from the failure of the third
>person to perform the contract.

Restatement (Second) of Torts § 766 (1979); see also Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 97 (Pa. Super. Ct. 2009) (noting Pennsylvania's adoption of section 766). As the Third Circuit Court of Appeals has pointed out, Section 766 "addresses disruptions caused by an act directed not at the plaintiff, but at a third person: the defendant causes the promisor to breach its contract with the plaintiff." Windsor Secs., Inc. v. Hartford Life Ins., Co., 986 F.2d 655, 660 (3d Cir. 1993).

Reliant's motion to dismiss presents two questions. The first is whether a claim for intentional interference with contractual relations must allege that the agreement at issue was breached or otherwise not performed. The second is whether Dreiling has adequately pleaded actual legal damage. I address these questions in turn below.

### A. Is an Actual Breach or Nonperformance of a Contract Required to State a Claim For Intentional Interference?

Most courts that have examined this issue have found that breach or nonperformance of an agreement is necessary to sustain an intentional interference with contractual relations claim. For instance, in Pilot Air Freight Corp., 2001 WL 959400, at *2, the court found that "section 766 requires either a breach or nonperformance of the contract at issue." Similarly, in Pawlowski, the Pennsylvania Superior Court affirmed the dismissal of the plaintiff's intentional interference claim because he did not "allege that [the third party] in any way failed to perform her contract." Pawlowski, 403 Pa. Super. at 79, 588 A.2d at 40; see also Creditron Fin. Servs., Inc. v. K2 Fin. LLC, No. 06-293, 2008 WL 2073969 (W.D.Pa. May 14, 2008) (finding that, because plaintiff had already litigated – and lost – breach of contract claim, and because collateral estoppel barred its relitigation,

plaintiff could not maintain its intentional interference claim); Al Hamilton Contracting Co., 434 Pa. Super. at 497, 644 A.2d at 191 (affirming dismissal of intentional interference claim because "[a]ppellant has not alleged that any third parties to which it was contractually related have refused to perform, or were precluded from partially or completely performing contractual duties . . . .").[3]

Consolidation Coal Co. v. Dist. 5, United Mine Workers of Am., 336 Pa. Super 354, 485 A.2d 1118 (Pa. Super. Ct. 1984), is also instructive. There, the court addressed the question of whether or not the plaintiff had to plead a "permanent severance" of the employment relationship in order to maintain an intentional interference claim. Although the Pennsylvania Superior Court answered no, it made clear that nonperformance of *some duration* is required:

> Section 766 does not state that an employment relationship must be completely severed before the injured party may sue for damages, nor is there a Pennsylvania case which so holds. . . . To interpret Section 766 in such a fashion would mean that third persons could interfere with an employer-employee relationship for a day, a month, or longer, yet avoid liability if the employees *returned to work* after the interference period had ceased.

Id. at 371 (emphasis added). Therefore, while the interruption in the contractual relationship need not be permanent to be actionable, alleging only a failed attempt to sever the relationship is not sufficient to state a claim. Id.; Western Essex Corp. v. Casio, Inc., 674 F.Supp. 8, 9 (W.D.Pa. 1987).

I have also examined those cases holding that an actual breach is not required to sustain a cause of action for intentional interference of a contract. In Total Care Sys., Inc. v. Coons, 860 F.Supp. 236 (E.D.Pa. 1994), the court found that a plaintiff who had alleged an attempt to sever its

---

[3] The undersigned has also recently found that nonperformance is required to maintain an intentional interference claim, noting that "one interferes with a contract only where he causes a party not to perform under it." Ruder v. Pequea Valley Sch. Dist., No. 10-442, 2011 WL 1832794, at *10 (E.D.Pa. May 12, 2011) (quoting DiGiorgio Corp. v. Mendez and Co., Inc., 230 F.Supp. 2d 552, 566 (D.N.J. 2002)).

7

contractual relationship with a third party had stated a claim for intentional interference. However, in Pilot Air Freight Corp., 2001 WL 959400, at *2 n.4, the court disagreed with this reasoning, finding it inconsistent with the language of section 766, which clearly requires a breach or nonperformance. Id.

I conclude that the bulk of the case law, as well as the plain language of the Restatement (Second) of Torts section 766, mandates that a plaintiff bringing an intentional interference claim must allege breach or nonperformance. The nonperformance need not be permanent or complete, but it must be sustained for some period. Section 766, after all, imposes liability only for "inducing or otherwise causing the third person not to perform the contract."[4] Restatement (Second) of Torts § 766 (1979).

Dreiling has not alleged a breach of the Agreement between itself and the Doctors, or a sustained period of nonperformance. Viewing the facts in the light most favorable to Dreiling, the complaint only alleges that Reliant has encouraged the Doctors to declare an impasse under the Agreement and thereby trigger the Buy-Sell provision. The complaint is totally devoid of any allegation that the Doctors have actually declared an impasse, or that they have otherwise breached the Agreement.

### B. What Is "Actual Legal Damage" in the Context of an Interference Claim?

Even if Dreiling's complaint could be read to allege a breach or nonperformance on the part

---

[4] The language of Restatement (Second) of Torts section 766A allows a claim to lie for performance made "more expensive or burdensome" by the defendant. That section deals with situations in which the defendant's conduct is directed at the plaintiff, whereas section 766 deals with conduct directed at a third party. Neither party argues, nor could they, that section 766A applies to the situation here. Moreover, Pennsylvania has never explicitly adopted section 766A. See Windsor Secs., Inc., 986 F.2d at 660-63 (discussing the differences between sections 766 and 766A, and noting that Pennsylvania has not specifically adopted 766A).

of the Doctors, I find that it fails to adequately allege that Dreiling has suffered any legal damage. Pennsylvania takes its definition of "actual legal damage" from the Restatement (Second) of Torts section 774A:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for:
> (a) the pecuniary loss of the benefits of the contract or prospective relation;
> (b) consequential losses for which the interference is the legal cause; and
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

Restatement (Second) of Torts § 774A (1979); see also Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 231-32 (3d Cir. 2009) (recognizing that Pennsylvania courts have adopted the Restatement definition of "actual legal damage"); Pelagatti v. Cohen, 370 Pa. Super. 422, 435, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987) (looking to the Restatement for the definition of "actual legal damage").

The damages at the heart of an intentional interference claim are those that flow from the Plaintiff's loss of "some benefit to which he was entitled by contract." Al Hamilton Contracting Co., 434 Pa. Super. at 497, 644 A.2d at 191. Consequential damages are not recoverable in the absence of pecuniary harm stemming from the loss of a contractual right. Pelagatti v. Cohen, 370 Pa. Super. 422, 435-36, 536 A.2d 1337, 1343-44 (Pa. Super. Ct. 1987) ("In the absence of pecuniary loss, an action for interference with contract brought for the purpose of recouping damage for loss of reputation only, would be nothing more than a defamation action under a different caption."); Shiner v. Moriarty, 706 A.2d 1228, 1238-39 (Pa. Super. Ct. 1998).

In Pawlowski, the Pennsylvania Superior Court found that the plaintiff's claimed damages – a loss of the "trust and confidence" that his client once had in him – were insufficient absent an

9

actual contractual loss.[5] Pawlowski, 403 Pa. Super. at 79, 588 A.2d at 40. Because the plaintiff had not alleged any "loss of the benefits of [his] contract," his allegations of damages were "clearly insufficient." Id. Similarly, in Shiner, the Superior Court found that there could be no liability on the interference claim because the plaintiff had produced only evidence of emotional – not contractual – harm. Shiner, 706 A.2d at 1238.

Dreiling alleges two kinds of harm: diminution in value of both the PDCR and the Reading Dialysis Center, and a general discord that now exists between it and the Doctors as a result of Reliant's conduct. Neither type of harm is recoverable. Dreiling has not alleged any facts to support their claim of damages for the diminution in value of the dialysis centers. Although Fed. R. Civ. P. 8(a) does not require the Plaintiff to cite specific numbers, Dreiling must provide *some* "factual enhancement" beyond its conclusory claim. Iqbal, 129 S. Ct. at 1949. Further, even if Dreiling did allege a diminution in value, it has not adequately pleaded that those damages flow from the alleged interference and therefore amount to a loss of contractually guaranteed benefits. Absent such facts, there is no evidence of pecuniary loss. See Shiner, 706 A.2d at 1239 (stating that the "gravamen of this tort is the loss of pecuniary benefits flowing from the contract itself"). In short, Dreiling has failed to "nudge[] [its] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Finally, just as the plaintiff in Pawlowski was unable to recover for the lost "trust and confidence" between promisor and promisee, absent pecuniary damages, Dreiling is unable to

---

[5] It is worth noting that Pawlowski misstated the definition of "actual legal damage." The court would have allowed recovery for not only contractual losses but also for "emotional distress or harm to [] reputation." Pawlowski, 403 Pa. Super. at 79, 588 A.2d at 40. The Superior Court clarified this in Shiner, 706 A.2d at 1239, holding that emotional or reputational harms are not recoverable in the absence of "pecuniary loss flowing from the interference."

recover on the basis that it and the Doctors are now experiencing a period of disagreement.[6] Dreiling has failed to provide any factual support for its stated damages, and has failed to link those damages to a breach of its Agreement with the Doctors. Therefore, its claim must be dismissed.[7]

## IV. Conclusion

Because Dreiling has failed to sufficiently allege a breach of its Agreement with the Doctors, and/or nonperformance, and because it has not sufficiently pleaded damages linked to a deprivation of any of its contractual rights, its complaint will be dismissed.

Our Order follows.

---

[6] The Court notes that the existence of the Buy-Sell and Impasse provisions may suggest that Dreiling and the Doctors recognized the possibility that business partners do not always get along. Dreiling can obviously not recover damages for the ordinary friction inherent in the relationship between fifty-fifty partners.

[7] I note that in its complaint, filed on April 30, 2010, Dreiling requested a preliminary injunction as part of its prayer for relief. Dreiling did not file a motion for a preliminary injunction, nor did it argue in its brief in opposition to Reliant's motion to dismiss that one was warranted.

In order to grant a request for a preliminary injunction, the plaintiff must prove, amongst other things, that it will suffer imminent, irreparable harm absent injunctive relief. BP Chems., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263-64 (3d Cir. 2000). Had there been an imminent threat of harm in this case, Dreiling could have filed a motion or otherwise contacted the Court at any point. It did not do so. See e.g., Orson, Inc. v. Miramax Film Corp., 836 F.Supp. 309, 312 (E.D. Pa. 1993) (holding unexplained delay of fifty days in filing a motion for a preliminary injunction sufficient to demonstrate absence of irreparable harm).